IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02873-BNB-MEH

CARLENE SOWERS,

Plaintiff,

v.

WAKEFIELD & ASSOCIATES,

Defendant.

_____

**ORDER**
_____

This matter arises on **Defendant's Motion for Summary Judgment** [Doc. # 29, filed 8/27/2010] (the "Motion for Summary Judgment"). Material issues of fact are disputed, requiring that the Motion for Summary Judgment be DENIED.

This action is brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. (the "FDCPA"). The Supreme Court recently reviewed the FDCPA, stating:

> Congress enacted the FDCPA in 1977 to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. . . . Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status; communicating with consumers at an "unusual time or place" likely to be inconvenient to the consumer; or using obscene or profane language or violence or the threat thereof.

Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, __U.S.__, 130 S. Ct. 1605, 1608-09 (2010) (internal citations omitted).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Id. at 324.

Failure to file a response within the time specified results in a waiver of the right to respond or to controvert the facts asserted in the summary judgment motion. Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002). Under these circumstances, the court accepts as true "all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment." Id.

The defendant argues that it is entitled to summary judgment because the plaintiff's deposition testimony is "inherently inconsistent" and the plaintiff "does not have any other

physical evidence to corroborate her self-serving testimony," Motion for Summary Judgment [Doc. # 29] at p. 12; "based upon the totality of Plaintiff's testimony and the [defendant's] telephone records that there is no genuine issue as to any material fact," id. at p. 9; and the plaintiff's testimony is less credible than evidence offered by the defendant. Id. at pp. 17-18. The plaintiff did not respond to the Motion for Summary Judgment.

The defendant has failed to meet its burden to demonstrate the absence of any disputed issue of material fact. To the contrary, in a verified complaint [Doc. # 1, filed 12/9/2009] (the "Complaint"), the plaintiff asserts the following:

> a. Defendant violated *§1692c(a)(1)* of the FDCPA by contacting Plaintiff at a time and place known to be inconvenient.
>
> b. Defendant violated *§1692d* of the FDCPA by engaging in conduct the natural consequence of which is to harass, oppress, and abuse Plaintiff.
>
> c. Defendant violated *§1692d(5)* of the FDCPA by causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff.
>
> d. Defendant violated *§1692d(6)* of the FDCPA by placing telephone calls and failing to disclose his/her identity.
>
> e. Defendant violated *§1692e* of the FDCPA by making false, deceptive, and misleading representations in connection with debt collection
>
> f. Defendant violated *§1692e(11)* of the FDCPA by failing to disclose in the initial communication that the communication was from a debt collector and anything said would be used for that purpose.
>
> g. Defendant violated *§1692e(11)* of the FDCPA by failing to state in subsequent communications that the communication is from a debt collector

Complaint [Doc. # 1] at ¶16. A verified complaint is treated as an affidavit for purposes of

reviewing a motion for summary judgment. Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311 (10th Cir. 2010).

Greater factual support for the allegations of the verified Complaint are provided in the plaintiff's deposition, where she testified:

> Q    (BY MR. HARKESS)  When did Wakefield call you that it was after 6:00 p.m.?
>
> A    Monday through Friday.
>
> Q    How many times did Wakefield call you a week?
>
> A    Once to four times a week.
>
> \*  \*  \*
>
> Q    And they [Wakefield] left a message once a week?
>
> A    Yes.
>
> \*  \*  \*
>
> Q    Okay.  When did they call you after 6--when did Wakefield call you after 6:00 p.m.?
>
> A    It was during the week.
>
> Q    It was one of those one to four times where some were blocked?
>
> A    No.  These were--when I didn't answer the phone, they were the 800 numbers coming up on the phone because I would get very upset and think we're in the middle of dinner and they still won't leave me alone.
>
> \*  \*  \*
>
> Q    So how many times do you estimate you received a call from Wakefield that you know was from Wakefield, not an unavailable number, after 6:00 p.m.?
>
> A    60 percent of the time.
>
> \*  \*  \*
>
> Q    So the April-of-2009 call that you actually spoke to Wakefield, could you describe the content of the conversation?
>
> A    She asked me if I was Carlene Sowers.  I told her yes.  She

says she was calling regarding the bill from Comfort Dental. I said yes. I said I am not responsible for this bill. Would you please quit calling me? Well, we're turning you over to a collection agency. Well, you are a collection agency. We're going to garnish your wages or take you to court. Do what you got to do.

\* \* \*

Q      What is the largest number of calls you can recall receiving from Wakefield in one day?

A      Two.

Q      And what is the largest number of calls you can recall receiving from Wakefield in one week?

A      Oh, gosh. 10, maybe 12.

\* \* \*

A      You've got me totally confused. They would call me twice a day, morning and at night.

Q      Okay. Okay. How many messages did you receive a day?

A      I only got one message maybe once a week from them, voice mail.

\* \* \*

A      One to two times a day they would call me.

Q      Every Monday through Friday?

A      Yes.

Q      They called you one to two times a day?

A      Yes.

Q      And you received, per your earlier testimony, one voice mail a week?

A      Yes.

Q      Every week from January until November?

A      October/November last year, yes.

\* \* \*

Q      Okay. Okay. Number 14 states "Defendant places

>     collection calls to plaintiff before 8:00 a.m. seeking and
>     demanding payment. Defendant has placed collection calls as
>     early as 6:30 a.m. seeking and demanding payment." When did
>     that occur?
>
>     A      That occurred back in September.
>
>     Q      September of 2009?
>
>     A      Yes.
>
>     Q      From Wakefield?
>
>     A      Yes.
>
>     Q      And what time?
>
>     A      It was like 6:02. I remember that call now.
>
>     Q      And why do you remember that call now?
>
>     A      Because I was getting ready to go take my daughter to
>     school and they called and left a message as soon as they called. I
>     didn't answer it. They left a message saying this is Wakefield
>     Associates calling.

Deposition of Carlene Sue Sowers [Doc. # 29-2] ("Sowers Depo.") at pp. 40, 42-43, 45, 49, 51, and 53-54.

The FDCPA "is a strict liability statute," and the plaintiff need only show one violation of its provisions to be entitled to judgment in her favor. O'Connor v. Check Rite, Ltd., 973 F. Supp. 1010, 1020 (D. Colo. 1997).

Here, there is evidence which, if believed by the jury, would entitle the plaintiff to a finding of a violation of the statute. For example, the plaintiff alleges in the verified Complaint that the defendant "violated *§1692c(a)(1)* of the FDCPA by contacting Plaintiff at a time . . . known to be inconvenient." Complaint [Doc. # 1] at ¶16a. In her deposition, the plaintiff

6

testified that the defendant frequently contacted her by telephone after 6:00 p.m., disrupting her dinner. Sowers' Depo. [Doc. # 29-2] at p. 42 lines 15-23; p. 43 lines 17-20. The plaintiff also testified that the defendant contacted her by telephone in September 2009 at approximately 6:02 a.m. Id. at p. 54 lines 6-22.

Section 1692c(a)(1), 15 U.S.C., provides:

> **(a) Communication with the consumer generally**
> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt--
> **(1)** at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location. . . .

There is no assertion that the plaintiff consented to be contacted at any time beyond those presumed by the statute to be convenient, or any assertion of a court order allowing contact at a presumptively inconvenient time. Consequently, the 6:02 a.m. call, if found by the jury to have occurred, could be a violation of the statute. Similarly, a jury could find that repeated calls at a time known or which should be known to be the plaintiff's meal time could be found to be inconvenient and a violation of the statute.

The plaintiff also alleges in the verified Complaint:

> Defendant violated *§1692e* of the FDCPA by making false, deceptive, and misleading representations in connection with debt collection.

Complaint [Doc. # 1] at ¶16(e). The allegation apparently relates to a telephone conversation between the plaintiff and a Wakefield collector which the plaintiff states occurred in April 2009

7

and included threats that Wakefield was going "to garnish [plaintiff's] wages or take [her] to court." Sowers Depo. [Doc. # 29-2] at p. 45 lines 12-21.

Section 1692(e), 15 U.S.C., prohibits a debt collector from employing false or misleading representations, as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> \* \* \*
>
> **(4)** The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

Initially, I must apply the standard of the "least sophisticated consumer" to determine whether the defendant's conduct violated §1692e. O'Connor 973 F. Supp. at 1016. As the court explained in Ellis v. Cohen & Slamowitz, LLP, 701 F. Supp. 2d 215, 219 (N.D.N.Y. 2010):

> To determine whether a debt collection practice is deceptive or misleading . . ., that practice must be viewed objectively from the perspective of the "least sophisticated consumer." The basic purpose of this standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. However, in crafting a norm that protects the naive and the credulous, courts have carefully preserved the concept of reasonableness without extending FDCPA protection to bizarre or idiosyncratic interpretations of collection notices and other practices.

(Internal quotations and citations omitted.)

Where, as here, there are allegations that a debt collector threatened to garnish wages or take other legal action against the debtor, courts have found that a question of fact may exist regarding the collector's intent. Id. at p. 221; Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1516-17 (9th Cir. 1994); Central Adjustment Bureau, Inc., 667 F. Supp. at 376.

8

The defendant submitted the affidavit of its legal department manager stating that Wakefield "regularly pursues litigation and other judicial remedies as part of its debt collection efforts," and that its collectors are trained that it is "unlawful to threaten to garnish a consumer's wages when Wakefield does not have a judgment against the consumer." Affidavit of Shannon M. Stein [Doc. # 29-7] at ¶¶5 and 7. The defendant also submitted the affidavit of its collector, stating that she "did not threaten to garnish Ms. Sower's wages or turn her over to a collection agency." Affidavit of Oha Kantha [Doc. # 29-8] at ¶6. At the very least, there is a disputed issue of fact concerning whether a threat was made to garnish the plaintiff's wages or pursue legal action.

If it is found that such a threat was made, there is no evidence now before me as to the defendant's actual intent. In particular, there is no evidence about whether the defendant owned this debt; whether the assignment of the debt included authority to bring a suit; or whether the defendant had any actual intention to bring a suit to collect the remaining balance of the indebtedness. Without an existing judgment or other legal authority, not here alleged or established to exist, the defendant certainly could not garnish the plaintiff's wages, and any threat to do so is a false, deceptive, or misleading statement in violation of the FDCPA.

In this respect, the case is similar to Nance v. Friedman, 2000 WL 1700156 (N.D. Ill. Nov. 8, 2000). In Nance, the debt collector argued that the allegedly threatening statement that he had been authorized to file suit was not actionable because it was true. The court denied the debt collector's motion for summary judgment, stating:

> Even if so, this would not necessarily carry the day for Friedman, for the letters do not just say he was authorized to sue; they indicate that a suit is imminent. Falsely threatening imminent litigation when the decision whether to sue has not been made

9

> violates the FDCPA. The fact that Friedman did in fact sue some
> debtors (including [the plaintiff]), though relevant, is not
> dispositive. The issue is whether the threat of imminent litigation
> was true when made.

Id. at *2.

Genuine issues of material fact exist precluding the entry of summary judgment for the defendant.

IT IS ORDERED that the Motion for Summary Judgment [Doc. # 29] is DENIED.

DATED September 29, 2010.

                              BY THE COURT:

                              s/ Boyd N. Boland
                              United States Magistrate Judge